UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
———————————————————————— x

THE PROCTER & GAMBLE COMPANY,  :  No. 14 Civ. 649 (VM)

                 Plaintiff,  :  Complaint

        - against -  :

HELLO PRODUCTS, LLC,  :  Plaintiff Demands Trial By Jury

                 Defendant.  :

———————————————————————— x

Plaintiff The Procter & Gamble Company ("P&G"), by its attorneys Kramer Levin Naftalis & Frankel LLP, for its complaint against defendant Hello Products, LLC ("Hello"), alleges as follows:

Introduction

1. This is an action for false advertising under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) and deceptive acts and practices and false advertising under N.Y. Gen. Bus. Law §§ 349 and 350.

2. P&G develops and sells high quality oral care products under the Crest® brand, including a toothpaste called Crest® Cavity Protection ("Crest Paste"). Hello recently began manufacturing and distributing oral care products, including Hello™ anticavity toothpaste ("Hello Paste"). On its labeling and in advertising and promotion, Hello claims that Hello Paste is "99% natural." In fact, a significant proportion of the ingredients in Hello Paste are extensively and chemically processed, and the product thus is not 99% natural.

3.  Hello is also engaged in false and misleading comparative advertising, promoting its products as uniquely natural and drawing a distinction to Crest on the ground that Hello Paste supposedly is not chemically processed. For example, in a recent media interview, Hello's Chief Executive Officer, Craig Dubitsky, characterized Crest as a "chemically enriched product[]" from which Hello diverges. *See* Joan Verdon, *Montclair-based Hello Products builds oral care line by word of mouth*, NorthJersey.com, (Oct. 23, 2013, 7:22 a.m.) http://www.northjersey.com/news/228884801_Montclair_company_builds_oral_care_line_by_word_of_mouth.html?page=all. Hello's website similarly seeks to differentiate its products by asserting they are "not the old copy + paste," and feature "chemistry not chemicals." *See* http://www.hello-products.com. Because Hello Paste is neither natural nor different from Crest in that its ingredients include chemicals and are extensively and chemically processed, these claims too are false and misleading.

4.  By this action, P&G seeks to (i) enjoin Hello from continuing to make false and misleading claims that its product is "99% natural"; (ii) enjoin Hello from continuing to make false and misleading comparative claims that its product is uniquely natural and lacking in chemicals or chemical processing; (iii) require Hello to disseminate corrective advertising; and (iv) recover damages for the substantial harm caused by Hello's false and misleading advertising.

The Parties, Jurisdiction and Venue

5.  P&G is an Ohio corporation with its principal place of business at One Procter & Gamble Plaza, Cincinnati, Ohio. P&G develops, manufactures and markets high-quality consumer products, including oral care products that are sold under the Crest brand name. Among the products in the Crest family of toothpastes is the Crest Paste.

6. Hello is a Delaware limited liability company with its principal place of business at 363 Bloomfield Avenue, Suite 2D, Montclair, NJ 07042. Hello is licensed with the New York Department of State to conduct business in New York.

7. Hello manufactures, distributes and sells oral care products, including Hello Paste. Hello claims that its products are "not the old copy + paste" but rather "99% natural 100% friendly" featuring "chemistry not chemicals." *See* http://www.hello-products.com. According to a corporate press release available on Hello's website, "hello is available nationwide." *See* http://www.hello-products.com/media.

8. This action is based on Section 43(a) of the Lanham Act, 15 U.S.C. § 1125 and sections 349 and 350 of New York General Business Law. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 for the claim arising under the Lanham Act, and 28 U.S.C. §§ 1332 and 1367 for the claims arising under New York statutory law.

9. Venue is properly laid in this district pursuant to 28 U.S.C. § 1391.

The Products at Issue

Crest Paste

10. Crest Paste is an anticavity toothpaste formulated to provide cavity protection for teeth and exposed roots and to provide fresh breath. The active ingredient in Crest Paste is sodium fluoride ("Fluoride"), a chemical clinically proven anticavity agent. In accordance with regulations promulgated by the United States Food and Drug Administration

("FDA"), the primary display panel of Crest Paste states that it is a "FLUORIDE ANTICAVITY TOOTHPASTE" (emphasized in circled text on the picture of Crest Paste below).



11. Since the launch of Crest in 1956, P&G has made significant expenditures on promotion and advertising to acquaint retailers and consumers with this product. To date, the company has spent hundreds of millions of dollars on marketing and advertising for Crest, a substantial portion of which related to Crest Paste.

12. Since launch, sales of Crest have been strong and to date amount to tens of billions of dollars.

Hello Paste

13. Hello Paste is an anticavity toothpaste, which was first launched in limited retail outlets in March 2013. The average retail price of Hello Paste is $4.81 ($.77 per ounce), which is a $2.93 premium over the average retail price of Crest base paste products ($.30 per ounce), including the Crest Paste.

14. The Hello Paste front label has at all times since its limited launch prominently claimed that the product is "99% natural." Moreover, although Hello Paste, like Crest Paste, contains the active chemical ingredient sodium fluoride, the front label of the Hello

Paste has never stated that the product contains the chemical Fluoride (omission emphasized in circled area on picture of Hello Paste below):



15. P&G's testing of Hello Paste also shows that it includes the following inactive ingredients in the following amounts: Sodium Lauryl Sulfate ("SLS") (3.5%), Sorbitol (approximately 37%), and Xylitol (10%). SLS is sourced from fatty acids that are extracted from coconut or palm kernel oil, which are then chemically converted into esters and hydrogenated through the addition of chemicals to produce fatty alcohol. The fatty alcohol is then sulfated and neutralized through further chemical addition to yield the final ingredient. Sorbitol is sourced

from corn starch that is liquefied by cooking with acid or alpha-amylase to render Dextrose, which is then hydrogenated in the presence of a chemical catalyst and subjected to carbon treatment and ion exchange to yield the final ingredient. Xylitol is manufactured through a series of chemical reactions, including hydrogenation in the presence of a chemical catalyst to remove carbon from sugar. Together, these ingredients, plus the active ingredient Fluoride, comprise approximately 50% of the ingredients in Hello Paste.

<u>Hello's False and Misleading Advertising</u>

16. In promoting and advertising its product, Hello has made two types of claims related to its assertions that Hello Paste is a natural product. First, Hello represents that its Hello Paste is "99% natural." Second, Hello claims that Hello Paste is uniquely natural and, in contrast to other toothpastes — including Crest Paste — devoid of chemicals or chemical processing. These claims are false and misleading.

<u>Hello's False and Misleading "99% Natural" Claim</u>

17. The Hello Paste front bottle label includes the prominent claim "99% natural." The "99% natural" claim is also used extensively on Hello's website (www.hello-products.com), Facebook page (https://www.facebook.com/HelloProducts), and Twitter feed (https://twitter.com/helloproducts).

18. The "99% natural" claim falsely states and misleadingly implies that 99% of the ingredients in the product are not extensively and chemically processed. As described above, however, at least 50% of the ingredients in Hello Paste are subjected to extensive chemical processing before transforming into the ingredients that are included in the product.

19. While there is no uniform definition of "natural" ingredients in cosmetics or over-the-counter drugs, no reasonable definition of "natural" includes ingredients that, even if sourced from "nature" (as all product ingredients must be), are subjected to extensive, transformative chemical processing before their inclusion in a product. For example, the National Advertising Division of the Better Business Bureau ("NAD") has found that a "natural" ingredient does *not* include one that, while "literally sourced in nature (as is every chemical substance), . . . is, nevertheless subjected to extensive processing before metamorphosing into the" ingredient that is included in the final product. *Tom's of Maine (Tom's of Maine Natural Mouthwash)*, Report # 3470, NAD/CARU Case Reports 4 (June 1998). Likewise, the FDA has issued informal guidance on the term "natural" in the context of food, "as meaning that nothing artificial or synthetic (including all color additives regardless of source) has been included in, or has been added to, a food that would not normally be expected to be in the food." *Food Labeling:* 58 Fed. Reg. 2302, 2407 (Jan. 6, 1993).

20. Along the same lines, the United States Department of Agriculture ("USDA") has issued a Food Standards and Labeling Policy Book (Aug. 2005), which states that the term "natural" may be used on labeling for products that contain processed ingredients only where such ingredients are subjected to "minimal" processing, and that '[r]elatively severe processes, e.g., solvent extraction, acid hydrolysis, and chemical bleaching would clearly be considered more than minimal processing.'" Office of Pol'y, Program & Emp. Dev. Food Safety & Inspection Serv., U.S. Dep't of Agric., *Food Standards and Labeling Policy Book* (2005), *available* at http://www.fsis.usda.gov/OPPDE/larc/Policies/Labeling_Policy_Book)082005_3.pdf. In regulating the National Organic Program, the USDA likewise defines "Nonsynthetic (natural)" as "[a] substance that is derived from mineral, plant, or animal matter and does not undergo a

synthetic process. . . ." 7 C.F.R. § 205.2. In contrast, "Synthetic" means "a substance that is formulated or manufactured by a chemical process or by a process that chemically changes a substance extracted from a naturally occurring plant, animal, or mineral sources,. . . ." 7 U.S.C. § 6502 (21).

21. In addition, a substantial percentage of consumers believe, upon viewing the product, that the ingredients in Hello Paste are 99% natural– a false message that such consumers otherwise would not have received in absence of the false advertising.

22. Accordingly, the "99% natural" claim is both literally false and misleading under any reasonable definition of natural.

Hello's False and Misleading Comparative Claim

23. In its advertising and promotion of Hello Paste, Hello also claims that its product is uniquely natural and, unlike other toothpastes on the market, including Crest Paste, does not contain chemicals and is not chemically processed. For example:

(i) Hello's website claims its products are "not the old copy + paste" and feature "chemistry not chemicals." *See* http://www.hello-products.com.

(ii) On September 6, 2013, Hello retweeted a post from Happi Magazine, which referenced Hello as the "New natural oral care company." See https://twitter.com/helloproducts.

(iii) In a September 30, 2013 article in USA Today that is linked to Hello's website, Mr. Dubitsky "explain[ed] what's behind his company's success in oral care products" stating that "Hello rethinks everything about oral care" and "thought

differently about the formulations, too, using *only natural* ingredients." See http://www.hello-products.com/media (emphasis added). In that same article, a Walgreens division Vice President explained that consumers were "attracted" to Hello's "*all-natural* ingredients." *See id.* (emphasis added).

(iv) A September 17, 2013 Yahoo! Finance article that is linked to Hello's website states that "Hello is also *trying to differentiate itself* by offering 99% natural oral hygiene products" and "the 99% natural ingredients *represent a big break from the standard industry offerings.*" *Id.* (emphasis added). The article quoted Mr. Dubitsky as stating: "there is an opportunity to come in and disrupt [the market] in a polite way. . . . 'If you tell a different story, the world is your oyster.'" The article characterizes Hello as the "David" to P&G's "Goliath." *See* http://www.hello-products.com/media. On October 1, 2013, Hello tweeted "Can a #SeriouslyFriendly David Take Down the Goliaths of Oral Hygiene? Meet #Hello yhoo.it/1hi3HqJ" and linked to the Yahoo! article. *See* https://twitter.com/helloproducts.

(v) In a recent interview, Mr. Dubitsky explained that Hello's products differ from Crest and products of another major oral care company, The Colgate-Palmolive Company, describing those products as "chemically enriched." Joan Verdon, *Montclair-based Hello Products builds oral care line by word of mouth,* NorthJersey.com, (Oct. 23, 2013, 7:22 a.m.) http://www.northjersey.com/news/228884801_Montclair_company_builds_oral_care_line_by_word_of_mouth.html?page=all.

24. To further the illusion of product differentiation, Hello Paste fails to disclose on the front label that it includes the chemical active ingredient Fluoride, the same

-9-

active ingredient disclosed on the Crest Paste label. Crest Paste and Hello Paste share the inactive ingredients SLS, Sorbitol and Xylitol, whose production (like many inactive ingredients in drug products) requires relatively extensive chemical processing.

25. The claim that the Hello Paste is uniquely natural or different than Crest Paste on account of a supposed lack of chemicals or chemical processing is thus literally false or false by necessary implication.

### The Parties' Prior Communications Concerning Hello's False Claims

26. On April 25, 2013, P&G informed Hello of P&G's position that the "99% natural" claim is false and misleading. P&G also informed Hello that other statements on its website, including that Hello Paste does not contain "controversial" or "harsh" chemicals, similarly were false and misleading, and should be discontinued. Finally, P&G noted that Hello Paste failed to comply with certain FDA regulations, including the requirement that Hello Paste's front label include the term "Fluoride" in describing its active ingredient.

27. On May 9, 2013, Hello informed P&G that it had removed the "harsh" and "controversial" chemical descriptions on the website. Hello indicated that it would correct its FDA violations at its next label printing. Hello also promised that it would make necessary modifications to ensure that its natural claims are consistent with applicable regulations and industry standards.

28. On June 17, 2013, Hello further committed to remove the 99% natural claim at its next label printing, although it represented that its limited distribution of Hello Paste

made it difficult to determine when its next printing would be. P&G relied on these promises in deferring legal action against Hello.

### Hello's Sales Expansion and Imminent Marketing Blitz

29. On September 24, 2013, Hello announced in a press release that it "more than double[d] its national retail presence," from "7,800 stores to more than 18,000 stores across the United States by the end of September, just six months after launch." http://www.hello-products.com/media. Despite Hello's prior representations, the labels of Hello Paste in this new distribution include the 99% natural claim and omit the FDA-required information.

30. In an interview published on October 23, 2013, Mr. Dubitsky revealed that Hello is planning to initiate its first national advertising campaign, which will likely feature its false and misleading "99% natural" and comparative claims.

### The Harm to P&G and to the Public

31. Hello's false and misleading advertising has caused and will continue to cause P&G irreparable injury. Among both consumers and dental professionals, Crest products are known to meet the highest standards of good oral health care. By falsely promoting its toothpaste as "99% natural" and, unlike Crest, devoid of chemicals or chemical processing Hello's actions threaten harm to P&G's reputation and that of Crest, thus jeopardizing P&G's hard-earned standing and market share. Unless and until Hello is ordered to cease making its false and misleading claims and issue corrective advertising, P&G stands to suffer a loss of its hard-earned sales, goodwill and consumer confidence that it may never be able to recoup.

32. Hello's false and misleading advertising also poses a risk to consumers. If Hello's false advertising is not stopped, consumers will continue to take away the false message that Hello is "99% natural," uniquely natural and, unlike Crest, devoid of chemicals or chemical processing. Consumers also will pay a nearly $3 premium for Hello Paste for supposed benefits that Hello Paste does not provide.

### First Claim for Relief

33. P&G repeats and realleges the allegations contained in paragraphs 1 through 32 of the complaint.

34. The claims and comparisons made by Hello in promoting its Hello Paste are false and misleading and violate Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

35. The foregoing acts have occurred in, or in a manner affecting, interstate commerce.

36. Unless Hello is enjoined by this Court from continuing to make these claims and ordered to retract and correct them, Hello's false and misleading advertising will continue to cause P&G to suffer a loss of consumer confidence, sales, profits and goodwill which will irreparably injure P&G.

37. P&G has no adequate remedy at law.

### Second Claim for Relief

38. P&G repeats and realleges the allegations contained in paragraphs 1 through 32 and paragraph 36 of the complaint.

KL3 2951459.7

39. The above described acts constitute a deceptive act and practice, in violation of Sections 349 of the New York General Business Law.

### Third Claim for Relief

40. P&G repeats and realleges the allegations contained in paragraphs 1 through 32 and paragraph 36 of the complaint.

41. The above described acts constitute false advertising in violation of Section 350 of the New York General Business Law.

Wherefore, P&G respectfully requests that the Court:

(i) issue a preliminary and permanent injunction ordering that Hello, its agents, servants, employees, representatives, subsidiaries and affiliates refrain from directly or indirectly using in commerce or causing to be published or otherwise disseminated any promotional materials or activities stating or implying that Hello Paste is 99% Natural or is a predominantly natural product;

(ii) issue a preliminary and permanent injunction ordering that Hello, its agents, servants, employees, representatives, subsidiaries and affiliates refrain from directly or indirectly using in commerce any claim, statement, or comparison that states or implies that Hello Paste is more natural than Crest;

(iii) issue a preliminary and permanent injunction ordering Hello to issue appropriate corrective advertisements, reasonably designed to reach all people to whom its false and misleading advertising was disseminated, retracting the false and misleading claims contained in the advertising; and

(iv) award P&G:

(a) Hello's profits, gains and advantages derived from Hello's unlawful conduct, such damages to be trebled pursuant to 15 U.S.C. § 1117;

(b) all damages sustained by P&G by reason of Hello's unlawful conduct, including all expenditures required to correct the false, misleading, unfair, and disparaging descriptions and representations alleged herein, such damages to be trebled pursuant to 15 U.S.C. § 1117;

(c) exemplary and punitive damages as the Court finds appropriate to deter any future willful conduct; and

(d) interest on the foregoing sums;

(v) award P&G attorneys' fees and costs and disbursements of this action; and

(vi) grant such other and further relief as the Court deems just and proper.

Dated: New York, New York
January 31, 2014

Kramer Levin Naftalis & Frankel LLP

By: _____
Harold P. Weinberger
Norman C. Simon
Eileen M. Patt
Kurt M. Denk
1177 Avenue of the Americas
New York, New York 10036
(212) 715-9100
Attorneys for Plaintiff
The Procter & Gamble Company

KL3 2951459.7